778 F.2d 1482
 19 Fed. R. Evid. Serv. 1522
 Carl J. ISAACS and George Elder Dungee, Petitioners-Appellants,
v.
Ralph KEMP, Warden, Georgia State Prison, Respondent-Appellee.
George Elder DUNGEE, Petitioner-Appellant,
v.
Ralph KEMP, Warden, Georgia State Prison, Respondent-Appellee.
Carl J. ISAACS, Petitioner-Appellant,
v.
Ralph KEMP, Warden, Georgia State Prison, Respondent-Appellee.
 Nos. 82-8017, 85-8202 and 85-8277.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 9, 1985.
Rehearing and Rehearing En Banc Denied Jan. 31, 1986.
 
 Thomas J. Killeen, Athens, Ga., for C. Isaacs.
 Stephen B. Bright, Carla J. Friend, Atlanta, Ga., W. Gary Kohlman, Robinson & Kohlman, Washington, D.C., for G. Dungee.
 Arthur K. Bolton, Atty. Gen., Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.
 Appeals from the United States District Court for the Middle District of Georgia.
 Before JOHNSON and ANDERSON, Circuit Judges, and HUNTER*, District Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 Petitioners Carl J. Isaacs and George Elder Dungee appeal from the federal district court's denial of their habeas corpus petitions.[1] On May 14, 1973, five members of the Alday family were shot to death in their mobile home in Donalsonville, Georgia. A sixth person, Mary Alday, was taken from the mobile home, raped, and then shot to death.[2] On September 4, 1973, Seminole County's grand jury indicted Carl Isaacs, Dungee, Billy Isaacs, and Wayne Carl Coleman on six counts of murder. Some three months later, Billy Isaacs, Carl's sixteen-year old brother, pleaded guilty to armed robbery and burglary. He was sentenced to a forty-year prison term. Shortly thereafter, the three remaining defendants were tried separately, convicted, and sentenced to death by electrocution. Several post-conviction proceedings followed.[3] Petitioners have exhausted their state remedies.
 
 
 2
 In this habeas proceeding, petitioners raise five issues: (1) whether pretrial publicity and the community's atmosphere were so prejudicial and inflammatory that the trial court's refusal to grant appellants' motion for a change of venue deprived them of their Fourteenth Amendment due process rights; (2) whether, under the Fourteenth Amendment's due process clause, appellants received sufficient notice specifying the aggravating circumstances which the prosecutor would rely on in the sentencing phase of the bifurcated trial; (3) whether the trial court's jury instruction on intent impermissibly shifted the burden of proof from the state to the petitioners in violation of the Fourteenth Amendment's due process clause; (4) whether Georgia's death penalty is applied in a discriminatory manner, thus violating the dictates of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (per curiam); and (5) whether the district court erred in refusing to allow appellants leave to amend their petition to add claims which are, in large part, already before the court in a related case.[4] We have carefully reviewed the entire record available for our consideration, and we conclude that the district court's order denying habeas relief should be reversed on the basis of the first issue raised by the petitioners.[5]
 
 
 3
 This court has considered the presumed prejudice issue at length in the companion case of Coleman v. Kemp, 778 F.2d 1487, published simultaneously with this opinion. In Coleman, we concluded that highly prejudicial publicity had saturated and inflamed the community to the extent that there was overwhelming prejudice in Seminole County both as to petitioner Coleman's guilt and the sentence he should receive. Accordingly, we presumed prejudice under Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). While the legal standards and relevant facts are basically the same, there are some differences between Coleman's case and the cases of Isaacs and Dungee.
 
 
 4
 We must determine whether differences between the cases of Isaacs and Dungee, on the one hand, and Coleman's case on the other hand, suggest that prejudice should be presumed for Coleman, but not for Isaacs and Dungee. Upon review, we conclude that while there are differences between the cases, these differences are not of sufficient significance to warrant a different result in Isaacs' and Dungee's cases.
 
 
 5
 The primary difference between Coleman's case and that of petitioner Isaacs is that the verdict and sentence in the previous cases as well as the explicit details of Billy Isaacs' testimony were not published prior to Carl Isaacs' trial. Our review of the record convinces us, however, that the same prejudicial sentiment in Seminole County against these defendants existed prior to Carl Isaacs' trial, and thus prejudice must be presumed in the instant case as well. Although the explicit details of Billy Isaacs' testimony were not published prior to Carl Isaacs' trial, the entry of Billy Isaacs' guilty plea, the fact that Billy Isaacs would be an eyewitness to the murders, and the fact that Billy Isaacs had issued a statement describing the murders were all widely known prior to the first trial. In short, there was overwhelming sentiment that "these were the 'right' defendants" prior to Carl Isaacs' trial, and neither the press nor the community made a genuine effort to separate the individual cases. Moreover, and very significantly, the extreme prejudice on the question of sentence, as noted in our Coleman opinion, was also present in the instant cases involving Carl Isaacs and Dungee. Thus, we conclude that the differences between the instant cases and Coleman are not sufficient to warrant a different result. Prejudice must be presumed here for the same reasons that prejudice was presumed in Coleman.
 
 
 6
 Moreover, there is an additional factor in Dungee's case which provides significant support for a finding of presumed prejudice. During the supplemental evidentiary hearings held in the district court,[6] Ms. Thelma Harrington testified that before she served as a juror in Dungee's case, she spent "most of the day" attending Carl Isaacs' trial each day that Isaacs' trial went on. The colloquy reveals the following:
 
 
 7
 Q. Did you go to all three trials? You'll have to answer yes or no.
 
 
 8
 A. Yes, sir.
 
 
 9
 Q. Were you up for jury service for all three trials?
 
 
 10
 A. No. Well, I was appointed a juror, but I served on just one of the men's trials. That was the colored man.
 
 
 11
 Q. All right. Now, before that man was tried, do you recall being questioned at the jury selection process of one of the other trials?
 
 
 12
 A. No.
 
 
 13
 Q. Now, when you say you went to all three trials, you mean you went each day to the trial?
 
 
 14
 A. We had to go.
 
 
 15
 Q. I don't mean just the one now that you were the juror for. But with regard to the other two trials, did you go to those trials?
 
 
 16
 A. Yes.
 
 
 17
 Q. And you sat through the entire trial?
 
 
 18
 A. Well, now, I don't say I sat through the entire trial, no.
 
 
 19
 Q. Well, let's take the trials one at a time. The first time after New Year's--the trial started right about New Year's Day, didn't they?
 
 
 20
 A. I don't know. I don't remember that either.
 
 
 21
 Q. How much did you go to the first trial?
 
 
 22
 A. Well, I didn't write it down in minutes and hours. I don't remember exactly.
 
 
 23
 Q. Would you spend let's say most of the day there?
 
 
 24
 A. Yes.
 
 
 25
 Q. Most of the day?
 
 
 26
 A. Yes.
 
 
 27
 Q. Each day that the trial went on?
 
 
 28
 A. Yes, that courthouse was packed and guards around to protect everything, and we went.
 
 
 29
 * * *
 
 
 30
 Q. When you went to the first trial, the Isaacs trial, do you recall hearing the one defendant who turned state's evidence? Did you hear his testimony in that case?
 
 
 31
 * * *
 
 
 32
 THE COURT: She doesn't understand your question. What he's asking you is--you've said that you went to the courtroom and heard part or all of that first trial. Now, that was the trial of who, Isaacs?
 
 
 33
 MR. BRIGHT: Yes, Your Honor.
 
 
 34
 THE COURT: And he's asking you whether you heard the testimony of Isaacs' brother at that trial. Did you hear the--
 
 
 35
 THE WITNESS: The younger brother, 16-year-old?THE COURT: Yes.
 
 
 36
 THE WITNESS: Yes, sir, I heard that.
 
 
 37
 THE COURT: That's what he's asking.
 
 
 38
 Supp. Record on Appeal, vol. 2, at 189-94.
 
 
 39
 It is clear that Ms. Harrington, a juror in Dungee's trial, sat through the earlier trial of Carl Isaacs and heard the cornerstone of the state's case, i.e., the testimony of Billy Isaacs. We need not decide whether that fact would constitute a separate and independent basis for finding a due process violation.[7] United States v. McIver, 688 F.2d 726 (11th Cir.1982), and United States v. Stratton, 649 F.2d 1066 (5th Cir. Unit A 1981,[8] found that a similar factor constitutes an independent due process violation. In McIver and Stratton, it was held that a defendant's Sixth Amendment right to be tried by an impartial jury is violated where the defendant is tried by the very same jury that has convicted his codefendants. Both cases involved a bifurcated trial procedure in which the prosecution's case against all defendants was presented to the jury, but one defendant's defense was postponed until after the jury had deliberated with respect to the codefendants. The McIver court specifically held that such a procedure "violates the Sixth Amendment because the jury might consider, even if inadvertently, the guilt of the defendant before it has heard the defendant's case." 688 F.2d at 729. The Stratton court stated that a "clearer case of jury prejudice is difficult to imagine." 649 F.2d at 1082. After earlier finding the co-defendants guilty, the Stratton jury was "predisposed to find guilt" and "virtually bound to convict" the later defendant. Id. We note the potential analogy between McIver and Stratton, where all jurors prematurely heard the government's case against the defendant, and Dungee's case in which one juror prematurely heard the cornerstone of the state's case against Dungee. We note also the similarity between juror Harrington's premature exposure to Billy Isaacs' testimony in this case, and the premature exposure of three jurors in Rideau to the televised confession. Because we consider juror Harrington's premature exposure to Billy Isaacs' testimony as another factor in the totality of the circumstances mandating a conclusion of presumed prejudice, we need not address the question of whether it would constitute a separate and independent basis for a due process challenge.[9]
 
 
 40
 We thus conclude that both petitioners Isaacs and Dungee are entitled to relief under the principle of presumptive prejudice. For the above stated reasons, the decision of the district court is reversed and the case is remanded to the district court with instructions to grant the writ of habeas corpus conditioned upon the state's right to retry the petitioners.
 
 
 41
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Edwin F. Hunter, Jr., U.S. District Judge for the Western District of Louisiana, sitting by designation
 
 
 [1]
 The district court granted respondent's motion for consolidation of the habeas corpus proceedings of Isaacs and Dungee
 
 
 [2]
 The facts are further summarized in Coleman v. Kemp, 778 F.2d 1487 (11th Cir.), published simultaneously with this opinion; Coleman v. State, 237 Ga. 84, 226 S.E.2d 911, 913-14 (1976)
 
 
 [3]
 All three defendants appealed to the Georgia Supreme Court, which affirmed the convictions and the sentences. Coleman v. State, 237 Ga. 84, 226 S.E.2d 911 (1976); Isaacs v. State, 237 Ga. 105, 226 S.E.2d 922 (1976) (per curiam); Dungee v. State, 237 Ga. 218, 227 S.E.2d 746 (1976). Petitioners Isaacs and Dungee then filed petitions for writs of certiorari in the United States Supreme Court. Their petitions were denied. Isaacs v. Georgia, 429 U.S. 986, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976); Dungee v. Georgia, 429 U.S. 986, 97 S.Ct. 508, 50 L.Ed.2d 598 (1976). On February 15, 1977, petitioners filed petitions for writs of habeas corpus in the Superior Court of Tattnall County, Georgia. Counsel agreed to consolidate these petitions. The Superior Court held a hearing and later issued an order denying the petitions. Dungee v. Hopper, Nos. 77-27 & 77-28 (Ga.Super.Ct. Aug. 31, 1977). Petitioners appealed and the Georgia Supreme Court affirmed the superior court's denial of appellants' habeas petitions. Dungee v. Hopper, 241 Ga. 236, 244 S.E.2d 849 (1978). Petitioners' subsequent certiorari petitions were denied by the United States Supreme Court. Isaacs v. Hopper, 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978)
 At this point, petitioners applied for habeas corpus relief in the United States District Court for the Southern District of Georgia. The District Court for the Southern District of Georgia transferred the case to the Middle District of Georgia. The District Court for the Middle District of Georgia denied petitioners' application. Isaacs v. Balkcom, No. 80-71-THOM (M.D.Ga. Oct. 22, 1981) (order denying petitions for writs of habeas corpus).
 After the companion case of Coleman v. Zant, 708 F.2d 541 (11th Cir.1983), was remanded for an evidentiary hearing, this case was also remanded with that portion of the Coleman hearings dealing with the same issues. After further evidentiary development, the district court again denied relief.
 
 
 [4]
 Docket Nos. 85-8202 (Dungee) and 85-8277 (Isaacs) were consolidated in this court with Docket No. 82-8017
 
 
 [5]
 We also hold that the fourth issue is controlled by our recent case of McCleskey v. Kemp, 753 F.2d 877 (11th Cir.1985) (en banc). Thus, we also reach that issue, and, following McCleskey, deny relief. Because of our disposition of the change of venue issue, we decline to rule on the other issues raised by petitioners
 
 
 [6]
 While the state has not argued it on appeal, in the district court the state repeatedly objected to Ms. Harrington's testimony under Fed.R.Evid. 606(b)
 The rule provides as follows:
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
 Fed.R.Evid. 606(b) (emphasis added). In our opinion, Ms. Harrington's testimony was clearly outside the rule because the testimony went only to establish the historical, objective fact that Ms. Harrington did attend a substantial portion of Carl Isaacs' trial. The attorneys did not inquire as to "any matter or statement occurring during the course of the jury's deliberations" nor did they seek to determine the effect of Ms. Harrington's attending Carl Isaacs' trial on her verdict in George Dungee's case. Similarly, the attorneys did not question Ms. Harrington regarding her "mental processes in connection therewith." Thus, we need not decide whether Ms. Harrington's attendance at Carl Isaacs' trial would qualify as "extraneous prejudicial information," coming within the exception and justifying inquiry into such matters. See Mattox v. United States, 146 U.S. 140, 148-49, 13 S.Ct. 50, 52-53, 36 L.Ed. 917 (1892) (distinguishing juror testimony as to "overt acts" from matters "resting in the personal consciousness of one juror"); see also Fed.R.Evid. 606(b) advisory committee note ("As to matters other than mental operations and emotional reactions of jurors, substantial authority refuses to allow a juror to disclose irregularities which occur in the jury room, but allows his testimony as to irregularities occurring outside," and "Under the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict"); 3 J. Weinstein & M. Berger, Weinstein's Evidence p 606 (1985)(Rule 606(b) prohibits testimony as to juror conduct "which has no verifiable outward manifestations," and approach adopted by 606(b) is that of "drawing a line between subjective and objective events").
 
 
 [7]
 Although petitioner Dungee focusses his argument with respect to juror Harrington under the rubric of "actual prejudice," that label is not controlling. Dungee has identified a specific fact (Ms. Harrington's attendance at Carl Isaacs' trial) and argues that that fact violates his Sixth Amendment right to "a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)
 Dungee's Sixth Amendment claim cannot be easily categorized. One might argue that it constitutes a subspecies of presumed prejudice since juror prejudice is presumed from a given fact--juror Harrington heard the crucial Billy Isaacs' testimony before Dungee's trial ever began--just as prejudice is presumed to exist in a community which is saturated with prejudicial, inflammatory publicity. See Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (prejudice presumed from the fact of pretrial television broadcast). On the other hand, Dungee's claim with respect to juror Harrington focuses on a single juror, and in that sense, the claim more closely resembles the actual prejudice found to exist in Irvin because the inquiry centers on members of the jury panel or venire. It also seems possible that Dungee's claim might properly be characterized as one of "implied bias." See Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring) (expressing view that majority opinion in Phillips is limited to the facts before the Court and does not preclude a finding of implied juror bias, as a matter of law, in "extreme situations").
 However, because we grant relief on the presumed prejudice theory based on the totality of the circumstances, we need not decide whether Dungee's claim with respect to juror Harrington would provide a separate and independent basis for relief or how such a claim should be labeled.
 
 
 [8]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former fifth circuit handed down prior to the close of business on September 30, 1981. Id at 1209
 
 
 [9]
 We also note that the Sixth Amendment right to confront and cross-examine witnesses may also be implicated where a juror is exposed to inculpatory evidence concerning a defendant prior to his trial. For example, juror Harrington heard Billy Isaacs' testimony the week before she was selected and served as a juror in Dungee's case. Dungee's attorney was not there to cross-examine Billy. Although Carl Isaacs' counsel did cross-examine Billy, no one was there to cross-examine and represent Dungee's interests. In light of our disposition of this case and except to the extent that the right of cross-examination is inherent in the presumed prejudice challenge, we need not rely upon the Sixth Amendment's confrontation clause