**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William REY, Defendant-Appellant.**

**No. 86–5093.**

United States Court of Appeals,
Eleventh Circuit.

March 9, 1987.

1454

Mark King Leban, William Aaron, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Robert Lipman, David Leiwant, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

* Honorable Damon J. Keith, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as

Before CLARK, EDMONDSON and KEITH *, Circuit Judges.

EDMONDSON, Circuit Judge:

Appellant William Rey appeals his conviction for conspiracy to possess cocaine with intent to distribute, actual possession of cocaine with intent to distribute, and use of a telephone to facilitate the commission of the cocaine conspiracy. We affirm the judgment of the district court.

I. The *Williamson* Issue

Rey contends that an undercover agent of the Drug Enforcement Agency, McCracken, selected him as the target of an investigation. Furthermore, Rey alleges that the DEA asked two informants, Badalich and Kulowitch, to participate in the investigation and, pursuant to a plea arrangement, promised them more lenient treatment with respect to criminal charges pending against them in return for their cooperation. According to Rey, the DEA's use of contingently motivated informants violated his due process rights under the doctrine announced by the former Fifth Circuit in *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962).[1]

The government disputes Rey's factual allegations, claiming that informant Badalich suggested Rey as an investigatory subject. Moreover, the government denies that its agreement with Badalich was contingent on the investigation of Rey. Therefore, the government contends that its conduct did not violate Rey's due process rights under the *Williamson* doctrine.

The United States magistrate determined that *Williamson* is still good law in this circuit and recommended that the case against Rey be dismissed "because of a *per*

precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

*se* and *a fortiori* violation of the *Williamson* rule against contingently motivated informants." The district court rejected this recommendation, ruling that "the issue is one of entrapment and must therefore be decided by a jury."

In *Williamson, supra,* the government agreed to pay informant Moye an allowance of the ten dollars per diem, plus a two hundred dollar reward if he purchased moonshine whiskey from defendant Williamson leading to Williamson's conviction and a one hundred dollar reward if he made a like purchase from co-defendant Lowrey. 311 F.2d at 442–43; *id.* at 446 (Cameron, J., dissenting). A divided panel of the former Fifth Circuit reversed Williamson's conviction, holding that the government's conduct was improper.

Judge Rives held that defendants' convictions must be reversed on the issue of entrapment. *Id.* at 441. Judge Rives stated that:

> It may possibly be that the Government investigators had such certain knowledge that Williamson and Lowrey were engaged in illicit liquor dealings that they were justified in contracting with Moye on a contingent fee basis, $200.00 for Williamson and $100.00 for Lowrey, to produce the legally admissible evidence against each of them. It may be also that the investigators carefully instructed Moye on the rules against entrapment and had it clearly understood that Moye would not induce them to commit a crime, but would simply offer them an opportunity for a sale. None of these facts or circumstances were developed in the evidence....
>
> *Without some such justification or explanation,* we cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed. Such an arrangement might tend to a "frame up," or to cause an informer to induce or persuade innocent person to commit crimes which they had no previous intent or purpose to commit....

Moye's deposition standing alone furnishes prima facie evidence of wrongdoing on the part of the Government investigators in employing Moye on a contingent fee basis. *Lacking any contradiction, justification or explanation of such a basis of employment,* the convictions of the defendants resulting from Moye's services cannot be sustained.

*Id.* at 444–45 (emphasis added).

In a special concurrence, Judge Brown held that the case did not involve entrapment. Rather, Judge Brown indicated, the government's conduct violated due process: "the means used to 'make' the case are essentially revolting to an ordered society." *Id.* at 445. Judge Cameron dissented. *Id.*

■ To the extent that *Williamson* held that the government's use of contingently-motivated informers creates an entrapment defense, it is no longer good law. The Supreme Court has subsequently held that the entrapment defense focuses on the subjective predisposition of the defendant to commit a crime, rather than on the conduct of the government. Where a defendant is predisposed to commit a crime, he cannot be entrapped, regardless of how outrageous or overreaching the government's conduct may be. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

Indeed, this circuit has held that *"Williamson* is not an entrapment case at all, since there was little question that the defendants were predisposed to commit the crimes for which they were convicted." *United States v. Walker,* 720 F.2d 1527, 1529 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984); *see also United States v. Richardson,* 764 F.2d 1514, 1520 n. 1 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985). Therefore, the district court in the case sub judice erred by treating the *Williamson* issue as an entrapment defense.

■ In light of the decisions rendered by this court, whether *Williamson* has continuing validity in this circuit as a due process doctrine is questionable. Prior to the division of the former Fifth Circuit into the present Fifth and Eleventh Circuits, the former Fifth Circuit never followed *Williamson* to reverse a conviction.[2] Nor has the Eleventh Circuit ever applied *Williamson* to reverse a conviction. Instead, in more than thirty reported opinions decided subsequent to *Williamson* involving contingently-motivated informers, the Eleventh Circuit and its predecessor, the former Fifth Circuit, have continually distinguished *Williamson* and restricted it.[3] It is interesting to note that even Judge Brown, the only judge on the original *Williamson* panel who treated the government's conduct not as entrapment, but as a due process violation, subsequently joined a per curiam opinion affirming Williamson's conviction after retrial on remand. *Williamson v. United States, (Williamson II),* 340 F.2d 612 (5th Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965).

■ In rare cases, use of a contingently motivated informer might, conceivably, be so outrageous as to violate due process. *Cf. United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1953); *United States v. Tobias,* 662 F.2d 381, 385–86 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982).[4] But this does not mean that the *Williamson* doctrine is good law, i.e., that absent justification or explanation, payment of an informer contingent upon ob-

---

**2.** We recognize that in *United States v. Bueno,* 447 F.2d 903 (5th Cir.1971), the former Fifth Circuit mentioned *Williamson* while reversing a criminal conviction on entrapment grounds. The *Bueno* court reasoned that the government's conduct essentially amounted to

> buying heroin from itself, through an intermediary, the defendant, and then charging him with the crime. This greatly exceeds the bounds of reason stated by this court in *Williamson v. United States*....

*Id.* at 905. *Bueno* was decided solely on entrapment grounds, not due process grounds, and thus does not support *Williamson* as a due process doctrine. Also, *Bueno* is distinguishable because the conduct which the court found offensive was the government's furnishing of the drug to the defendant, rather than the government's use of a contingently-motivated informer.

In any event, the Supreme Court specifically disapproved *Bueno* in *United States v. Russell,* 411 U.S. 423, 427–28, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973), and overruled it sub silentio in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

**3.** Due to obvious space limitations, we cannot discuss the facts and rationales of all these decisions. We list a few of the settled limitations on the *Williamson* doctrine which, in our view, buttress the conclusion that *Williamson* has been so restricted that nothing may remain of it. Use of a contingently motivated informer is lawful where the government does not preselect the target of the informer's investigation, *United States v. Shearer,* 794 F.2d 1545, 1549 (11th Cir.1986), or where payment is contingent on a successful investigation in general or successful investigation of a particular crime, rather than

the successful prosecution of a particular individual. *Owen v. Wainwright,* 806 F.2d 1519, 1522 (11th Cir.1986); *United States v. Sanchez,* 790 F.2d 1561, 1564 (11th Cir.1986); *United States v. Valle-Ferrer,* 739 F.2d 545, 546–47 (11th Cir.1984). Moreover, payment of an informant's expenses is not an improper contingent arrangement. *United States v. Carcaise,* 763 F.2d 1328, 1332 (11th Cir.1985). Even where the government pays an informer to convict a particular person, the government's conduct is not improper so long as there is some justification for this arrangement. *Hill v. United States,* 328 F.2d 988 (5th Cir.), *cert. denied,* 379 U.S. 851, 85 S.Ct. 94, 13 L.Ed.2d 54 (1964) (use of contingent arrangement justified where accused had a past record and neighbors had complained to an agent of the accused's activities); *Harris v. United States,* 400 F.2d 264 (5th Cir. 1968) (prior knowledge that defendant is committing the unlawful act justifies use of contingent fee arrangement). For other factors which have justified affirmance of convictions notwithstanding the *Williamson* doctrine, see *Valle-Ferrer, supra,* 739 F.2d at 547 (informant's fee and eligibility for reward disclosed to jury); *United States v. Beard,* 761 F.2d 1477 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985) (testimony by government agent corroborates the informer's testimony); *Heard v. United States,* 414 F.2d 884, 886–87 (5th Cir.1969) (corroboration of the informer's testimony).

**4.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

taining the conviction of a specific person in itself violates due process.

▇ We need not decide, as a general proposition, whether *Williamson* is actually the law in this circuit. Instead, we look to the concrete facts of this case. Agent McCracken participated as the would-be purchaser in the cocaine "buy" in this case. Where "the [drug] buy was not made by the informer, ... but rather by the agent, ... the problem noted in *Williamson* ... that a contingent fee arrangement might tend to a 'frameup' by an informer is not present." *United States v. Jenkins,* 480 F.2d 1198, 1199–1200 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 256, 38 L.Ed.2d 151 (1973); *see also, United States v. McClure,* 577 F.2d 1021, 1022–23 (5th Cir. 1978) (participation of agent in drug buy eliminates possibility that informer fabricated evidence to collect a fee).

Moreover, the government did not call the contingently-motivated informers as witnesses in this case; instead, the informants were called by appellant to testify as part of his entrapment defense. Thus, the potential problem of a contingently-motivated informer being presented by the government as a witness and perjuring his testimony was not present in this case.

▇ In contrast, during Williamson's first trial, the prosecution relied on the informant's testimony as part of the

government's case. At the beginning of the government's case in chief, the government introduced the informant's deposition into evidence and read it to the jury. The informant had died prior to Williamson's first trial. Therefore, in *Williamson* the potential problem of perjury by a contingently motivated government witness was not only present, but aggravated by the fact that the jury heard the informant's testimony read from a cold deposition and was unable to observe the informant's demeanor when assessing his credibility.[5]

Even assuming that Rey's version of the facts is true,[6] the government's use of contingently-motivated informers in this case did not violate due process. Although Rey may find the use of such informers to be unsavory, their use certainly did not rise to the level of a constitutional violation.[7]

If *Williamson* remains, in reality, the law of this circuit, it does not apply to the circumstances of this case.

## II. The Allen Charge

The jury deliberated for approximately five and a half hours on Friday, November 22, 1985, and resumed its deliberations at 9:30 a.m. on Tuesday, November 26, 1985. At noon on Tuesday, the jury informed the judge that it could not reach a unanimous verdict. The judge called the jury into the courtroom and, over defendant's objection,

---

5. The above details concerning the informant's death and the admission of his deposition into evidence at trial do not appear in the published opinions of *Williamson I* or *II*. Instead, they may be found in the transcript of Williamson's first trial; that transcript is part of the former Fifth Circuit's records. A court may take judicial notice of its own records and the records of inferior courts. *ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 n. 2 (5th Cir. Unit B 1981). The former Fifth Circuit is the predecessor of the Eleventh Circuit; its records are the Eleventh Circuit's records for purposes of such judicial notice.

6. As noted earlier, the parties dispute certain facts, such as whether the plea arrangement was contingent on an investigation of Rey, and whether the government or the informers initially selected Rey as an investigatory target.

Because the district court erroneously held that the *Williamson* question was an entrapment issue for the jury, it rejected the magistrate's · recommendation to dismiss, without accepting or rejecting the limited factual findings on this issue by the magistrate, and without making any independent factual findings on this issue. We need not, however, remand for a resolution of the factual dispute, nor determine the scope of review of the magistrate's factual findings. Assuming, *arguendo,* that the appellant's version of the facts is correct, the government's conduct in this case did not violate his due process rights.

7. Rey presented an entrapment defense to the jury. In light of the guilty verdict, the jury obviously did not believe that Rey was entrapped. On appeal, Rey does not contend that the government's conduct entrapped him.

gave the jury a modified Allen instruction.[8] The jury resumed its deliberation at 12:10 p.m.

Shortly thereafter, the jury foreperson resigned, with the permission of the court; and the jury selected a new foreperson in her stead. At 1:45 p.m., the jury returned with a verdict of guilty on all three counts.

Rey argues that the giving of the modified Allen charge unduly coerced the jury into reaching a verdict and, thereby, violated his right to due process. Because of the terms, tone and timing of the charge, this panel is seriously concerned by the use of the modified Allen charge in this case.

The instruction of which Rey complains derives its name from *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in which the Supreme Court

upheld an instruction urging the jury to reach a verdict.[9] Subsequently, courts adopted many variations of this jury instruction.

The modern judicial trend, however, is against the Allen charge. In the exercise of their supervisory power, three federal circuit courts have prohibited Allen charges since 1969;[10] and four other federal circuit courts have sharply curtailed their use.[11] Moreover, during the last twenty-seven years, at least eighteen states have rejected the Allen charge.[12]

Scholars have sharply criticized the Allen charge because of its coercive impact on juries.[13] Also, the American Bar Association has recommended against the use of the Allen charge and proposed guidelines for less coercive instructions.[14]

**8.** For a copy of the Allen instruction given in this case, see the Appendix to this Opinion.

**9.** The *Allen* Court summarized as follows the instruction it upheld:

> in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.
>
> 164 U.S. at 501, 17 S.Ct. at 157.

**10.** *United States v. Silvern*, 484 F.2d 879 (7th Cir.1973) (en banc); *United States v. Thomas*, 449 F.2d 1177 (D.C.Cir.1971) (en banc); *United States v. Fioravanti*, 412 F.2d 407 (3d Cir.), *cert. denied*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969).

**11.** *United States v. Blandin*, 784 F.2d 1048 (10th Cir.1986); *United States v. Scott*, 547 F.2d 334 (6th Cir.1977); *United States v. Stollings*, 501

F.2d 954 (4th Cir.1974); *United States v. Angiulo*, 485 F.2d 37 (1st Cir.1973).

**12.** *Fields v. State*, 487 P.2d 831 (Alaska 1971); *State v. Thomas*, 86 Ariz. 161, 342 P.2d 197 (1959); *People v. Gainer*, 19 Cal.3d 835, 566 P.2d 997, 139 Cal.Rptr. 861 (1977); *Taylor v. People*, 176 Colo. 316, 490 P.2d 292 (1971); *People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601 (1972), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2731, 37 L.Ed.2d 144 (1973); *State v. Nicholson*, 315 So.2d 639 (La.1975); *Kelly v. State*, 270 Md. 139, 310 A.2d 538 (1973); *People v. Sullivan*, 392 Mich. 324, 220 N.W.2d 441 (1974); *Sharplin v. State*, 330 So.2d 591 (Miss.1976); *State v. Randall*, 137 Mont. 534, 353 P.2d 1054 (1960); *State v. Garza*, 185 Neb. 445, 176 N.W.2d 664 (1970); *State v. Alston*, 294 N.C. 577, 243 S.E.2d 354 (1978); *State v. Czachor*, 82 N.J. 392, 413 A.2d 593 (1980); *State v. Marsh*, 260 Or. 416, 490 P.2d 491 (1971), *cert. denied sub nom., O'Dell v. Oregon*, 406 U.S. 974, 92 S.Ct. 2420, 32 L.Ed.2d 674 (1972); *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971); *State v. Patriarca*, 112 R.I. 14, 308 A.2d 300 (1973); *State v. Ferguson*, 84 S.D. 605, 175 N.W.2d 57 (1970); *Kersey v. State*, 525 S.W.2d 139 (Tenn.1975).

**13.** *See, e.g.*, Sullivan, *Deadlocked Juries and the Allen Charge*, 37 Me.L.Rev. 167 (1985); Note, *The Allen Charge: Recurring Problems And Recent Developments*, 47 N.Y.U.L.Rev. 296 (1972); Note, *On Instructing Deadlocked Juries*, 78 Yale L.J. 100 (1968); Note, *Due Process, Judicial Economy, and the Hung Jury: A Reexamination of the Allen Charge*, 53 Va.L.Rev. 123 (1967).

**14.** ABA Special Committee on Minimum Standards for the Administration of Criminal Justice, Standards Relating to Trial By Jury, sec. 5.4(b) (Approved Draft, 1968).

In 1973, the former Fifth Circuit considered the propriety of the Allen charge. *United States v. Bailey,* 480 F.2d 518 (5th Cir.1973) (en banc). The court split on this issue, with a majority of nine judges upholding use of the Allen charge. Seven judges, however, joined a dissenting opinion advocating prohibition of the Allen charge.

After passage of more than thirteen years, the time is ripe for reconsideration of the *Bailey* decision. The composition of this court has changed markedly since the *Bailey* decision. Indeed, only two judges who participated in the *Bailey* decision remain as active judges in this circuit—and both of these joined the dissenting opinion against the Allen charge. Moreover, the movement in opposition to the Allen charge has continued to grow since the *Bailey* decision in 1973: at least five more jurisdictions have rejected the *Allen* charge.[15]

■ The charge given by the trial judge was virtually identical to the pattern Allen instruction for this circuit. Although it lacked some of the most offensive provisions of other Allen-type charges, it still tended to coerce the jury into reaching a verdict. Two aspects of the instruction seem particularly improper. First, the trial judge stressed that:

the trial has been expensive in time, effort, money and emotional strain to both the defense and the prosecution.... *Obviously,* another trial would *only* serve to increase the costs to both sides. (emphasis added).

The practical effect of such an instruction is to discourage jurors in the minority and to pressure them to abandon their honestly held beliefs, not in response to considerations regarding the guilt or innocence of the defendant, but in response to the expediency of saving expenses. By stating that "obviously" the "only" effect of a new trial would be "to increase ... costs," the judge effectively tells the minority that holding

out for their position is pointless, because the majority view will prevail on retrial.

Second, the Allen charge in this case included the following language:

[I]f a substantial majority of your number are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression upon the minds of the others.

On the other hand, if a majority or even a lesser number of you are in favor of an acquittal, the rest of you should ask yourselves again and most thoughtfully whether you should accept the weight and sufficiency of the evidence which fails to convince your fellow jurors beyond a reasonable doubt.

Because this instruction asks jurors to discount their views if they are in the minority *or* in the majority, it virtually guarantees jury confusion. "Such a charge is so difficult to comprehend that ... it is 'an invitation to frolic with Alice in Wonderland.'" *State v. Nicholson,* 315 So.2d 639, 642 (La. 1975) (quoting *United States v. Fioravanti,* 412 F.2d 407, 417 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969)).

This instruction can intimidate individual jurors. After hearing this confusing instruction, a juror will likely remember only that the judge wants them to reach a verdict and that they should reconsider their opinions. *Practically, the pressure to change position will fall most heavily on the minority.*

"[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986) (quoting *United States v. Nobles,* 422 U.S. 225, 230, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141 (1975)). Under the Sixth Amendment, a person charged with a serious federal crime has the right to have the factual question of his guilt or innocence determined by a jury of his

**15.** *State v. Czachor,* 82 N.J. 392, 413 A.2d 593 (1980); *People v. Gainer,* 19 Cal.3d 835, 566 P.2d 997, 139 Cal.Rptr. 861 (1977); *State v. Nichol-* son, 315 So.2d 639 (La.1975); *Kersey v. Tennessee,* 525 S.W.2d 139 (Tenn.1975); *State v. Patriarca,* 112 R.I. 14, 308 A.2d 300 (1973).

peers. *See Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Where a federal defendant avails himself of this right, he may be convicted only if the jury unanimously finds him guilty. Fed.R.Crim.P. 31(a); *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); *United States v. Smedes*, 760 F.2d 109, 111 (6th Cir.1985).

In other contexts, courts have been careful to ensure that the jury performs its crucial fact-finding role free of prejudice, improper influences, and coercion. *See, e.g., Isaacs v. Kemp*, 778 F.2d 1482 (11th Cir.1985) (pretrial publicity); *United States v. Delaney*, 732 F.2d 639 (8th Cir.1984) (juror communication with policeman during trial); *United States v. Richardson*, 651 F.2d 1251 (8th Cir.1981) (publicity during trial). Yet, this circuit condones the Allen charge which has a potential for serious interference with the fact-finding process.

In some cases, the duty of a juror is rigorous. Deliberations can be long, hard and heated. It is each juror's duty to stand by his honestly held views; this can require courage and stamina. A majority of jurors eager to go home can exert tremendous pressure on a minority juror who is seriously trying to do his duty. The last thing such a minority holdout juror needs is for the trial judge—cloaked with the full authority of his office—to even hint that holding out will be futile in the long run and that a verdict could be reached if the holdout would just reconsider.

The jury trial system has not malfunctioned when the jury cannot reach a verdict. One of the safeguards against the conviction of innocent persons built into our criminal justice system is that a jury may not be able to reach a unanimous verdict. Furthermore, a hung jury does not necessarily result in a retrial: one or both parties frequently change their view of the case so that a plea arrangement is reached or charges are dropped. Conse-

quently, there is no necessity for judges to force a verdict.

As we see it, the Allen charge interferes with the jurors when they are performing their most important role: determining guilt or innocence in a close case. It unjustifiably increases the risk that an *innocent* person will be convicted as a result of the juror abandoning his honestly-held beliefs.

If this were a question of first impression, we would find the Allen charge in this case impermissible. But we are bound by precedent. Our predecessor, the former Fifth Circuit, gave a general imprimatur to Allen charges in the en banc *Bailey* decision. This circuit has upheld an Allen charge that employed very similar language. *United States v. Alonso*, 740 F.2d 862, 876–78 (11th Cir.1984), *cert. denied*, 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985). Also, the former Fifth Circuit has upheld Allen charges under circumstances that suggest more coercion than in the present case. *See, e.g., Andrews v. United States*, 309 F.2d 127, 129 (5th Cir.1962), *cert. denied*, 372 U.S. 946, 83 S.Ct. 939, 9 L.Ed.2d 970 (1963) (Allen charge given only 1 hour and 5 minutes after the jury began its deliberations, and jury deliberated for only 25 minutes after hearing the Allen charge before returning verdict).

To distinguish his case from our binding precedents, appellant makes much of the resignation of the jury foreperson. Appellant contends that this demonstrates that the Allen charge had such a severely coercive impact that we can grant him relief notwithstanding our precedents. The fact that the foreperson resigned does not, however, make this case materially different: every time an Allen charge effectively dynamites a jury, at least one juror changes his mind. The charge is no more coercive because that juror may happen to be the foreperson.

While we think the full court ought to reconsider *Bailey* and its progeny, we are, for now at least, overcome by precedent. Accordingly, the district court judgment must be AFFIRMED.

## APPENDIX

### ALLEN CHARGE GIVEN TO THE JURY IN THIS CASE

I'm going to ask you to continue your deliberations in an effort to reach an agreement upon a verdict and dispose of this case.

Now I have a few additional comments at this time that I would like for you to consider as you do so: This is an important case. The trial has been expensive in time, effort, money and emotional strain to both the defense and the prosecution.

Now, if you should fail to agree upon the verdict, the case will be left open and may have to be tried again.

Obviously, another trial would only serve to increase the costs to both sides. And there's no reason to believe that the case can be tried again by either side any better or more exhaustively than it has been tried before you.

Any further jury must be selected in the same manner and from the same source as you were chosen, and there's no reason to believe that the case could ever be submitted to twelve men and women more conscientious, more impartial or more competent to decide it or that more or clearer evidence could be produced.

Now, if a substantial majority of your number are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression upon the minds of the others.

On the other hand, if a majority or even a less number of you are in favor of an acquittal, the rest of you should ask yourselves again and most thoughtfully whether you should accept the weight and sufficiency of the evidence which fails to convince your fellow jurors beyond a reasonable doubt.

Remember at all times, no juror is expected to give up an honest belief he or she may have as to the weight or effect of the evidence. But after full deliberation and consideration of the evidence in the case, it's your duty to agree upon a verdict if you can do so.

You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the defendant should have your unanimous verdict of not guilty.

You may be leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary.

I'm going to ask you to retire once again and continue your deliberations with these additional comments in mind, to be applied of course in conjunction with all of the other instructions I have previously given you.