**UNITED STATES of America, Plaintiff,**

v.

**Robert G. WILSON, et al., Defendants.**

**No. 84–854–CR.**

United States District Court,
S.D. Florida,
Miami Division.

March 17, 1989.

Leon B. Kellner, U.S. Atty., Miami, Fla., for plaintiff.

E. David Rosen, Miami, Fla., for defendants.

ORDER

JAMES LAWRENCE KING, Chief Judge.

THIS MATTER comes before the Court on remand from the United States Court of Appeals, Eleventh Circuit, for the limited purpose of an order pursuant to Fed.R. App.P. 9(b) stating the reasons for the denial of bond pending appeal previously entered by this Court.

I. BACKGROUND

Defendant Robert G. Wilson is one of five defendants indicted in this case. A jury found him guilty of the following 52 felony counts contained in the indictment:

(1) Count 1—Conspiracy, 18 U.S.C. sec. 371;

(2) Counts 2–11—Mail Fraud, 18 U.S.C. sec. 1341 & 1342;

(3) Counts 12–31—Wire Fraud, 18 U.S.C. sec. 1342 & 1343;

(4) Counts 36–38—Income Tax Evasion, 26 U.S.C. sec. 7201; and

(5) Counts 46–47, 49–60, 62–65—Assisting in the preparation of false statements on income tax returns, 26 U.S.C. sec. 7206(2).

On June 11, 1986, Wilson was sentenced as to each of these counts resulting in an aggregate sentence of 18 years of imprisonment. Pursuant to the Court's order he surrendered himself voluntarily on July 14, 1986.

On January 15, 1987, the defendant was released from the federal correctional institution at Maxwell Air Force Base on bond pending appeal of this case. After revocation of this bond, Wilson surrendered himself voluntarily and was again imprisoned on January 19, 1988. Following this second incarceration, he moved for bond pending appeal and that motion was denied on August 29, 1988 by this Court. The appeal of that Order resulted in the limited remand of this case.

## II. DISCUSSION

The defendant has the burden of establishing the following four factors in order for this Court to grant bond pending appeal:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purposes of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of *all counts* on which imprisonment has been imposed.

*U.S. v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985) (emphasis added); *See* 18 U.S.C. sec. 3143(b).

The Government has not stated in its response to the motion for bond pending appeal that either of the first two factors are applicable. Indeed, the defendant cannot be considered likely to flee or pose a danger to the safety of another person in the community since he had been placed on bond pending appeal for over a year without incident and defendant then voluntarily surrendered himself on January 19, 1988 after that bond was revoked. Moreover, the Government has not argued, nor does defendant's motion suggest, that the appeal is for the purposes of delay.

Since the first two issues are inapplicable, the Court need only address the third and fourth issues; whether the appeal raises a "substantial question" and if that substantial question were determined favorably to the defendant, whether the conviction would be reversed or the defendant retried on all counts on which imprisonment has been imposed. Defendant contends that two issues on appeal satisfy the third and fourth requirements. Specifically the defendant contests the prosecutor's rebuttal during closing argument as set forth in the margin[1] on the ground that the remarks on his failure to testify are tantamount to a violation of the Fifth Amendment prohibition against compulsory

---

**1.** Among others, Wilson challenges the following comments made by the prosecutor during rebuttal in closing argument:

"Now, it is true the defense has no obligation to prove anything.... They don't have to ask a single question. But, doesn't it abuse your common sense to suggest that if there was such a return for Robert Wilson in '78, '79 or '80, Mr. Beatty is not ..."

\* \* \* \* \* \*

"Its one thing to cross-examine witnesses on the stand and defense lawyers have been stat-

ing that this is the way we find out the truth. But as Mr. Ostrow takes us to task for not asking this question or that question. It is another thing not to ask questions and then come in and wait for summation and say well, where's the proof."

The trial judge sustained objections to both of these remarks. On the second objection, the judge gave a curative instruction to the effect that defendant had no obligation to put on evidence or question witnesses.

self-incrimination. As to the informants, defendant contends that the contingent fee arrangement with the two paid informants resulted in payments of $10 million and $1.3 million and is therefore so outrageous as to violate due process.

A "substantial question" is "one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Giancola,* 754 F.2d at 901. It is clear that defendant's two issues raise "substantial questions" on appeal. *See United States v. Griggs,* 735 F.2d 1318 (11th Cir.1984) (prosecutorial comment improper where manifestly intended to reference defendant's silence and jury would naturally and necessarily construe it as such); *United States v. Rey,* 811 F.2d 1453 (11th Cir.1987) (in rare cases, use of contingently motivated informer might be so outrageous as to violate due process); *United States v. Shearer,* 794 F.2d 1545 (11th Cir.1986) (exorbitant contingency fee case merit scrutiny because of questionable credibility). Thus, defendant has satisfied the third requirement of *Giancola.*

■ As to the fourth requirement, however, defendant has failed to demonstrate that a favorable decision on those substantial questions will result in a reversal or an order for a new trial *on all counts.* The prosecutor's remarks are, at best, comments on defendant's failure to testify regarding the evidence presented in support of the charges for income tax evasion and assisting in the preparation of false statements on income tax returns. Indeed, the first remark objected to by defendant specifically questions the existence of his tax returns for the three years of 1978, 1979 and 1980. Nothing in the prosecutor's comments refer to the conspiracy, wire fraud or mail fraud charges. Any "spillover" effect would have been minimal in light of the curative instruction given by the trial judge. Accordingly, defendant has failed to demonstrate that a successful appeal of this issue would result in a reversal or a new trial on all counts for which he was imprisoned.

Defendant has likewise failed to satisfy his burden with respect to the testimony of the two paid confidential informants. The record in this case consists of 47 volumes of transcripts, a number of which involve the testimony of the paid informants, but these were not the only witnesses. Even assuming *arguendo,* that the testimony of the two informants related to those counts for which defendant was convicted, there is sufficient independent evidence to support the conviction and therefore a successful appeal would not result in a reversal or retrial on *all* counts.

For example, as to the conspiracy charge contained in Count I the Government introduced the testimony of Richard G. Williams. Williams was a former attorney originally licensed in England who later began practicing law in the Bahamas from 1968–1978. He met defendant Wilson in 1978 and after two meetings entered Wilson's employ for $18,000 per year. Williams understood his duties to include the set up of various corporations to be used in connection with tax shelters resulting from the trading of government securities. He further testified regarding the purchase of a Turks and Caicos Island corporation whose shares were placed in a trust for the benefit of Robert Wilson. Through this company passed tax shelters in the form of non-existent securities trade confirmations.

Williams also testified that early in his relationship with Wilson he had formed an opinion that the tax shelter program being conducted by Wilson was not legitimate. In addition, Williams' testimony links defendant Wilson with paid informant Joe Tritt. At a meeting in Toronto, Canada, in November 1978, Wilson, Williams, Tritt and others were present discussing the coordination of the sale of tax shelters in the United States with Wilson's foreign corporation. Toward the end of the discussion, Williams testified that Tritt exclaimed words to the effect: "Oh, now I know where you all are coming from, you don't really want me to carry out these transactions, you just want paper, you just want me to produce paper, right?"

Williams' testimony provides evidence of the conspiracy by the defendants and also establishes the purchase of the corporation as an overt act in furtherance of the conspiracy. Thus Williams, and several other witnesses, provided evidence of a conspiracy independent of that elicited from the paid informants. For this reason, Wilson has failed to satisfy the fourth requirement of *Giancola.*

### III. CONCLUSION

In sum, it is evident that at least with respect to the conspiracy count, the record provides ample evidence, through the Williams' testimony as well as that of other witnesses, to establish the existence of a conspiracy and the requisite overt acts. Because the evidence supports Wilson's conviction without consideration of the paid informant testimony, he has failed to demonstrate that a successful appeal of this issue would result in a reversal or a new trial on *all counts* for which he was imprisoned. Accordingly, the motion for bond pending appeal was denied.

DONE AND ORDERED.