265 F.Supp.2d 1081 (2003)
UNITED STATES of America, Plaintiffs,
v.
Richard L. DAVIS, Defendant.
No. 4:02-CR-432 CAS.
United States District Court, E.D. Missouri, Eastern Division.
May 30, 2003.
*1082 Antoinette Decker, Office of the U.S. Attorney, St. Louis, MO, for Plaintiffs.
Lee T. Lawless, Asst. Federal Public Defender, St. Louis, MO, N. Scott Rosenblum, Partner, Rosenblum and Schwartz, Clayton, MO, for Defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on defendant Richard Davis's motion for judgment of acquittal and motion for a new trial. By order dated April 22, 2003, the Court expressed its concern about a matter not specifically raised in either motionwhether certain questions posed to defendant by the government during cross-examination warrant granting defendant a new trial because they improperly shifted the burden of proof to defendant in a significant manner. The Court asked the parties to submit supplemental briefs on this issue. Upon review of the entire record, including the supplemental briefs, the Court concludes that the line of questioning at issue was improper and that defendant is entitled to a new trial on this basis. Defendant's motion for judgment of acquittal shall be denied, as well as his motion for a new trial on all other grounds.
Defendant was indicted on one count of possession of over 50 grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). At trial, the government presented evidence *1083 that a parking valet at a residential hotel called a security officer and told him that two men, one of whom had a large bag of marijuana, just drove up, asked him to charge the parking fee to a certain room, and entered the building. The officer went to the specified room and smelled marijuana outside the door. He called for backup, and after two other security officers and a police officer arrived a short time later, knocked on the door in question.
When an occupant of the room opened the door, one of the officers saw a bag of marijuana on a table and all four officers entered the suite. Defendant was sitting on a couch and an officer told him to stand. As defendant was getting up, the officer saw him struggling to remove an object the size of a bagel or flattened tennis ball from his front pants pocket and place the object behind a sofa pillow. The reason defendant was struggling was because his pants, identified as khaki Dockers, were tight, so tight in fact that the front was partly unclosed. Defendant and the two other adults in the room were arrested and the marijuana and the flattened object, which proved to be approximately 84 grams of crack cocaine, were seized. Another officer also testified that defendant was wearing tight pants, but this officer did not see defendant remove anything from his pocket.
Defendant testified that he never possessed the crack cocaine, that it was "cooked" before he got to the hotel room, and that it was placed behind the pillow by the occupant of the suite before that person opened the door to the officers. He testified that he did not own or ever wear tight pants, and that he would have been laughed at by his friends if he were to wear such pants. Rather, he regularly wore baggy pants and that when he was arrested he had on a pair of Jabots brand baggy pants. Defendant testified that the pants he was presently wearing were similar to the ones he was wearing at the time of the arrest. At the request of defense counsel, defendant stood up and showed the jury how his pants fit, and testified that the pants he was wearing on the day in question fit the same way.
Defendant's direct examination and part of his cross-examination by the government was conducted on Friday afternoon. The trial recessed for the weekend, resuming on Monday morning with the government's cross-examination, during which the following exchange took place.
Q. Now, did you wear your Jabots today?
A. Uh-uh.
Q. No?
A. Uh-uh.
Q. How come you haven't worn your Jabots to show the jury what your Jabots look like?
DEFENSE COUNSEL: Objection,
Your Honor, relevance.
THE COURT: Sustained.
Q. Do you still have them?
A. Do I still have them?
Q. Yes.
A. Yeah.
The prosecutor then moved on to another line of questioning. As indicated, counsel did not request, nor did the Court give, a specific cautionary instruction telling the jury to disregard the prosecutor's question above, or reminding the jury that the burden of proof was upon the government. The Court's instructions to the jury both at the beginning of the trial and before they went to deliberate included a general instruction on objections, telling the jury: "Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question, you must ignore the question and must not try *1084 to guess what the answer might have been."
The instructions also told the jury that the defendant is presumed to be innocent and that "the presumption of innocence alone is sufficient only if the government proves, beyond a reasonable doubt, each essential element of the crime charged." In the burden-of-proof instruction given before deliberation the Court included the following statement: "There is no burden upon a defendant to prove that he is innocent." The trial lasted approximately three days. After approximately two days of deliberation, the jury informed the Court that it could not reach a decision. The Court gave the jury an Allen charge,[1] telling the jury to continue deliberating, and four hours later the jury returned a guilty verdict.
As noted above, there are two motions before the Court, one for judgment of acquittal and one for a new trial. "[A] judgment of acquittal should only be granted if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." United States v. Gomez, 165 F.3d 650, 654 (8th Cir.1999). Here, the Court concludes that there was sufficient evidence to support the verdict of guilt. The jury was entitled to resolve the conflicts in the evidence against the defendant. Having done so, there was sufficient evidence to find that defendant possessed with the intent to distribute in excess of 50 grams of crack cocaine.
The standard for granting a new trial, however, is different. Federal Rule of Criminal Procedure 33 provides: "The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." In ruling on a motion under Rule 33, the Court must balance errors "against the record as a whole and evaluate the fairness of the trial." United States v. McBride, 862 F.2d 1316, 1319 (8th Cir.1988). Unless the District Court determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand if it is supported by sufficient evidence. United States v. Lacey, 219 F.3d 779, 783 (8th Cir.2000). "In making this determination, the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Huerta-Orozco, 272 F.3d 561, 565 (8th Cir.2001); United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir.1980).
The government has the burden of proving the defendant's guilt by introducing evidence to support its theory of the case. "The defendant does not have to disprove his guilt by introducing evidence contrary to the government's theory at the government's behest." United States v. Badger, 983 F.2d 1443, 1455 (7th Cir.), cert. denied, 508 U.S. 928, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). Here, the government's cross-examination tactic of asking defendant why he wasn't wearing his Jabots "to show the jury" what they looked like was improper. It asked defendant to introduce evidence to disprove his guilt.
The relevant factors in considering whether the above-quoted exchange unfairly prejudiced the jury's deliberations by shifting the burden of proof to defendant include (1) the nature and seriousness of the prosecutor's misconduct, (2) whether the prosecutor's questions were invited by the defense, (3) whether the Court's instructions to the jury were adequate, (4) whether the defense was able to counter the improper inferences through rebuttal, and (5) the weight of the evidence *1085 against defendant. See id. at 1450. In similar circumstances, courts also consider "the prosecutor's purpose in making the statement, i.e., whether the statement was willful or inadvertent." United States v. Balsam, 203 F.3d 72, 87 (1st Cir.), cert. denied, 531 U.S. 852, 121 S.Ct. 129, 148 L.Ed.2d 83 (2000); see also United States v. Wadlington, 233 F.3d 1067, 1077 (8th Cir.2000) (applying similar standard in the context of considering a motion for a mistrial based upon improper questioning of the defendant; noting unique position of district court in measuring the effect of an improper question on the jury), cert. denied, 534 U.S. 1023, 122 S.Ct. 552, 151 L.Ed.2d 428 (2001).
Having heard the evidence and listened to the testimony, the Court believes that this case presented a very close question for the jury. The jury had to weigh the credibility of the government witnesses who said they saw defendant remove the cocaine from the pocket of his tight khaki Docker pants against the credibility of defendant who testified that he never possessed the cocaine and never wore tight pants. The issue of whether defendant was wearing tight Docker pants or not was directly related to who was telling the truth and was thus key to the government's case. "[T]he credibility of a testifying defendant is often of crucial importance in a criminal trial." United States v. Godwin, 272 F.3d 659, 678 (4th Cir.2001), cert. denied, 535 U.S. 1069, 122 S.Ct. 1942, 152 L.Ed.2d 846 (2002). Because of the closeness of the case, the Court is left with the belief that the government's improper questions unduly impacted the defendant's right to a fair trial.
As noted above, although the Court sustained defense counsel's contemporaneous objection on the ground of relevance, the Court did not give a specific cautionary instruction telling the jury to disregard the government's question and reminding the jury that the burden of proof is on the government. Furthermore, even after the objection was sustained, the prosecutor continued this line of questioning, asking defendant if he still owned the Jabots.[2]
In light of the fact that the questions at issue were asked after a weekend break in the trial, as well as the context in which the exchange occurred, the Court believes that this line of questioning was planned by the prosecutor. It was not a reaction to something defendant said at the time during his cross-examination. This factor weighs in favor of granting a new trial.
It is as much a prosecutor's obligation "to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In Berger, the Supreme Court discussed the tendency for the prosecutor to have a strong influence on the jury:
It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations... are apt to carry much weight against the accused when they should properly carry none.
Id. at 88, 55 S.Ct. 629.
It is true that during closing argument the government did not mention defendant's *1086 failure to produce the pants, and did not argue that this failure supported a guilty verdict. Nevertheless, viewing the matter in the context of the whole trial, and relying primarily on the nature of the instructions and the weight of the evidence, the Court concludes that the prosecutor's questions regarding plaintiffs failure to produce evidence to rebut a key credibility point in the government's case rendered the trial fundamentally unfair and improperly shifted the burden of proof to defendant on a key aspect of the case. The government's supplemental brief underscores the importance of this issue in the case. This is not a case in which the evidence against defendant was otherwise so strong that the Court can say the prosecutor's misconduct did not affect the verdict.
As noted above, the jury deliberated for approximately two days and was unable to reach a verdict, at which point the Court gave an Allen charge to the jury. The Court cannot say, even in hindsight, that giving the Allen charge in this case was improper. See United States v. Glauning, 211 F.3d 1085, 1087 (8th Cir.2000) (no undue coercion where Allen charge was given after 12-14 hours of deliberation following a two-day trial and jury returned a verdict two hours later). The fact, however, that the jury could not reach a verdict after approximately two days of deliberation before the Allen charge and took four hours after the Allen charge to reach a verdict demonstrates the closeness of the case. The Court also notes that there is an inherent degree of coercion to any Allen charge. See United States v. Rey, 811 F.2d 1453, 1458-60 (11th Cir.) ("the Allen charge interferes with the jurors when they are performing their most important role: determining guilt or innocence in a close case"), cert. denied, 484 U.S. 830, 108 S.Ct. 103, 98 L.Ed.2d 63, (1987).
The government correctly argues in its supplemental brief that cross-examination may embrace any matter germane to direct examination, and the government is entitled to attack the credibility of a criminal defendant who takes the stand. Clearly, the prosecutor was entitled to question defendant about the pants he wore at the time of his arrest. This was a crucial credibility issue in the case. Where the prosecutor crossed the line, however, was asking defendant why he was not wearing the particular pants in question to show them to the jury.
Asking why defendant did not wear the particular pants directly implanted in the jury's mind the notion that production of the particular pants in question would have been for their benefit. It would have been easy for defendant to produce them if he still owned them, yet he failed to do so. Thus the follow-up question, "Do you still have them?" added fuel to the fire. Also troubling is the fact that the prosecutor asked the second question after the Court had sustained defense counsel's objection to the first question.
The prosecutor directly implied that defendant failed an easy test of his credibility. But this test was improperly set up by the prosecutor shifting the burden of proof to defendant. Although the Court assumes the jury followed the instructions to ignore the answer to the prosecutor's first question, the Court cannot conclude that the jury was able to ignore the pointed suggestion instilled by the prosecutor here.
In its supplemental brief, the government relies on United States v. Long Feather, 299 F.3d 915 (8th Cir.2002), to support its position that the questions at issue were not improper. In that case, the defendant was convicted of voluntary manslaughter and assault for the death of someone who died after the defendant *1087 kicked him in the head. Photographs showed that the defendant was wearing sandals at the time of the crimes. During cross-examination of the investigating officer, defense counsel brought out that the government failed to produce the sandals as evidence and to test them to determine if they could have caused the fatal blow. The defendant later testified that the sandals were still in his possession. In closing argument, defense counsel suggested that the government's failure to test and produce the sandals was a critical flaw in the government's case. The prosecutor responded in his rebuttal argument by pointing to the defendant's testimony that the sandals were still in his possession. The Court of Appeals held that the prosecutor's comment was not improper. Id. at 918-19.
The situation here is quite different. The prosecutor did not simply and solely ask defendant if the particular pants he was wearing at the time of his arrest were still in his possession. Rather, as described above, the prosecutor's question of whether he still had the pants came after she asked defendant the improper burdenshifting question of why he wasn't wearing them "to show the jury."
The Court recognizes that its authority to set aside a jury verdict and grant a new trial "should be exercised sparingly and with caution." See United States v. Huerta-Orozco, 272 F.3d at 565. The Court concludes that this case warrants such relief.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for acquittal is DENIED. [Doc. 55]
IT IS FURTHER ORDERED that defendant's motion for a new trial is GRANTED. A new trial date shall be set by separate order. [Doc. 56]
NOTES
[1] See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[2] The Court notes another line of questioning during cross-examination which was improper. The prosecutor repeatedly asked defendant about the fact that he had violated his probation on another conviction. In this instance, however, the Court did give a specific cautionary instruction stressing to the jury that defendant was only on trial for the charged offenses and not for violating his probation.