924 F.2d 167
 SYNCOM CAPITAL CORPORATION, a District of Columbia
corporation, Plaintiff-counter-defendant-Appellee,
v.
Booker T. WADE, Jr., Defendant-counter-claimant-Appellant.
 No. 88-15659.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1990.
Decided Jan. 22, 1991.
 
 Booker T. Wade, Jr., Los Angeles, Cal., in pro per.
 Stephen G. Montoya and Stephen M. Dichter, Harrison, Harper, Christian & Dichter, Phoenix, Ariz., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before BROWNING, PREGERSON and TROTT, Circuit Judges.
 PER CURIAM:
 
 
 1
 Booker T. Wade appeals a district court judgment finding him personally liable to Syncom Capital Corporation ("Syncom") for the repayment of loans Syncom extended to several of Wade's broadcasting enterprises. Wade challenges the district court's choice of law and application of the law chosen, the adequacy of its statement of findings and conclusions, its denial of his counterclaim, and several of its pretrial and trial decisions. Syncom contends Wade's appeal should be dismissed because he failed to provide us with a transcript of the proceedings below, pursuant to Fed.R.App.P. 10(b)(2).
 
 
 2
 We have jurisdiction under 28 U.S.C. Sec. 1291 (1988), and we dismiss the appeal for Wade's failure to comply with Fed.R.App.P. 10(b)(2).
 
 
 3
 * Facts and Proceedings Below
 
 
 4
 Wade founded and controlled three low-power broadcasting companies: Community Television Network of Flagstaff ("CTN-Flagstaff"), Community Television Network, Inc. ("CTN"), and Wade Communications Group, Inc. ("WCG"). In 1982 Wade approached Syncom, a minority enterprise venture capital group, to obtain financing for these operations. Syncom advanced the Wade-controlled entities several loans. All three ventures failed, and the loans were never repaid.
 
 
 5
 In 1985 Syncom sued the three groups and Wade personally in a diversity action in federal court, alleging they defaulted on three loan agreements. First, Syncom claimed it loaned CTN $20,000 in return for two $10,000 promissory notes. Wade later personally guaranteed the notes, Syncom argued, making him liable for the money owed. Second, Syncom claimed it loaned CTN-Flagstaff $65,000, for which Wade was personally liable on the theory that Wade used the company as his "alter ego," purely to shield himself from personal liability. Third, Syncom asserted the same theory with respect to a $105,000 loan it had extended to WCG. Wade filed a counterclaim alleging Syncom had breached a 1984 agreement in which it had promised to loan the Wade groups between $500,000 and $2,500,000. In 1987 Syncom amended its complaint to allege WCG and CTN-Flagstaff were sham corporations. The corporate entities disappeared from the suit and Wade remained in his individual capacity, representing himself pro se.
 
 
 6
 Three witnesses testified at trial: Syncom's President and Vice-President, and Wade. The court admitted thirty-five of Syncom's exhibits into evidence, but refused to admit any of Wade's exhibits because they went beyond the pretrial order. On September 28, 1988, following a bench trial, the district court delivered an oral judgment in favor of Syncom on each of its claims and against Wade on his counterclaim. On October 17, 1988, the district court filed a formal judgment in favor of Syncom in the total amount of $365,149.86, including interest. Wade timely appeals the grant of Syncom's claim and the denial of his counterclaim.II
 
 
 7
 Wade's Failure to Comply with Fed.R.App.P. 10(b)(2)
 
 
 8
 Syncom argues Wade was responsible for providing a fuller record for us to review: "Specifically, Wade's 'excerpts from the record' contain absolutely no trial testimony and only five of the thirty-five exhibits which Syncom offered and the district court admitted into evidence at trial." Syncom itself has provided us with the missing exhibits, so that point is now moot, but we still lack the trial transcript that Wade was responsible for furnishing. Without a trial transcript, the majority of Wade's contentions are unreviewable.
 
 
 9
 We also agree that Wade's failure in this respect justifies summary affirmance of the district court's decision, pursuant to Fed.R.App.P. 10(b)(2). Rule 10(b)(2) provides:
 
 
 10
 If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.
 
 
 11
 Fed.R.App.P. 10(b)(2). Based on this rule, we have held that failure to provide relevant portions of a transcript may require dismissal of the appeal. In re Ashley, 903 F.2d 599, 603 n. 1 (9th Cir.1990); Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc., 877 F.2d 787, 789-90 (9th Cir.1989); Southwest Admin'rs, Inc. v. Lopez, 781 F.2d 1378, 1378-80 (9th Cir.1986); Thomas v. Computax Corp., 631 F.2d 139, 141 (9th Cir.1980).[1]
 
 
 12
 In Portland Feminist Women's Health Ctr., appellant asked the court to review the district court's factual findings, but failed to provide a transcript relevant to the contested issues. The court held that "[w]hen an appellant fails to supply a transcript of a district court proceeding, we may dismiss the appellant's appeal or refuse to consider the appellant's argument." 877 F.2d at 789. The same situation occurred in Southwest Admin'rs, Inc., where the court held:
 
 
 13
 We conclude that resolution of this appeal on the merits involves issues of fact mixed with issues of law. Because [appellant] did not provide a transcript of the trial, this court cannot properly review this case on appeal. We therefore dismiss the appeal for failure to comply with the applicable local and federal rules.
 
 
 14
 781 F.2d at 1378-79.
 
 
 15
 Likewise, Wade argues the district court's findings are insufficient for purposes of Fed.R.Civ.P. 52(a),[2] and that they are clearly erroneous in any event. Wade's Rule 52(a) claim rests in part on the premise that the trial record does not adequately fill the gaps in the district court's findings, requiring a remand for more detailed findings of fact and conclusions of law to be prepared. Thus, both of his main contentions on appeal depend for their resolution on an examination of the facts elicited at trial. Because we lack a transcript detailing what these facts might be, we are not in a position to review this appeal. This is Wade's fault.
 
 The appeal is accordingly
 
 16
 DISMISSED.
 
 
 
 [1]
 See also, Alizadeh v. Safeway Stores, Inc., 910 F.2d 234, 237 (5th Cir.1990); United States v. Mobile Materials, Inc., 871 F.2d 902, 906, 906 n. 3 (10th Cir.), modified on reh'g on other grounds, 881 F.2d 866 (1989); cert. denied, --- U.S. ---, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); United States v. Wilson, 904 F.2d 656, 659, 659 n. 15 (11th Cir.1990)
 
 
 [2]
 Rule 52(a) provides:
 In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon....
 Fed.R.Civ.P. 52(a). Wade asks that we reverse the district court's judgment because the court failed to make the necessary findings of fact and conclusions of law, either orally or in writing. However, "[f]ailure to comply with Rule 52(a) does not require reversal unless a full understanding of the question is not possible without the aid of separate findings." Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir.1986). An appeals court may be able to gain such a "full understanding" by examining the record independently. Optyl Eyewear Fashion Int'l Corp. v. Style Cos. Ltd., 760 F.2d 1045, 1051 (9th Cir.1985). In this case, our review of Wade's Rule 52(a) claim depends substantially on what facts were established at trial. Thus, a transcript was needed.