FILED

JUN 05 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-11-1143-DHPa |
| | ) | |
| GRACE M. CENICEROS, | ) | Bk. No.   10-16363-TA |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GRACE M. CENICEROS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| SUZY YAQUB; JESSICA WALTER, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on May 17, 2012
at Pasadena, California

Filed - June 5, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

_____

Appearances:     David Brian Lally, Esq. argued for Appellant Grace
                 M. Ceniceros; Appellees Suzy Yaqub and Jessica
                 Walter did not appear at argument.

_____

Before:  DUNN, HOLLOWELL and PAPPAS, Bankruptcy Judges.

_____

    [1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

The appellees, Suzy Yaqub and Jessica Walter (collectively, "appellees"), are former employees of the debtor, Grace M. Ceniceros.[2] Prepetition, the appellees initiated a lawsuit against the debtor and her corporation, Ceniceros Residential, Inc. ("CRI"), asserting various employee rights claims.[3] Before the appellees could proceed further in their lawsuit, the debtor filed her individual chapter 7 bankruptcy petition on May 12, 2010.

The appellees moved to dismiss the debtor's chapter 7 case under § 707(b)(1)("motion to dismiss"), which the debtor opposed. The bankruptcy court granted the motion to dismiss at the hearing.[4]

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules." The Rules of the United States Bankruptcy Appellate Panel of the Ninth Circuit are referred to as "BAP Rules."

[3] The appellees claimed that the debtor and CRI violated California labor laws by failing to pay them minimum wage and overtime. The appellees included copies of pleadings from the lawsuit in a relief from stay motion filed in CRI's chapter 7 bankruptcy case (main case docket no. 13). Neither the appellees nor the debtor provided these documents in the record on appeal. We obtained a copy of the relief from stay motion and its attachments from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] Although it granted the motion to dismiss at the hearing, the bankruptcy court did not enter an order dismissing the debtor's chapter 7 bankruptcy case. On November 21, 2011, we issued an order requiring the debtor to provide a copy of the dismissal order.

(continued...)

Before the bankruptcy court entered an order dismissing her chapter 7 case, the debtor filed a motion for reconsideration ("reconsideration motion"). The bankruptcy court denied the reconsideration motion. The debtor appeals both decisions. We AFFIRM.

**FACTS**

To point out that the schedules filed by the debtor in her personal chapter 7 bankruptcy case are somewhat confusing is an understatement. Among the assets scheduled by the debtor in her chapter 7 case, she included four parcels of real property, all located in Westminster, California ("Westminster properties"). She also scheduled a 100% interest in CRI, a California corporation that operated health care facilities for disabled adults.[5] The debtor was the president and sole shareholder of CRI. CRI leased from the debtor the Westminster properties from

---

[4](...continued)
The debtor filed a response to our order, contending that the bankruptcy court's order denying the reconsideration motion ("reconsideration order") should be construed as an order dismissing her chapter 7 case. We informed the debtor that neither the title nor the text of the reconsideration order contained language dismissing her chapter 7 case. We then issued an order of limited remand ("remand order") to the bankruptcy court to allow it to enter an order specifically dismissing the debtor's chapter 7 bankruptcy case. The bankruptcy court entered an order dismissing the debtor's chapter 7 case on February 10, 2012 ("dismissal order").

[5] CRI filed its own chapter 7 petition on June 7, 2010 (10-17718). CRI's chapter 7 case was dismissed and closed on October 25, 2010, one week after its chapter 7 trustee filed a no asset report.

3

which it operated its health care business.  In her statement of intention, the debtor proposed to retain and make payments on all of the Westminster properties.

The debtor reported in her original Schedule F that she had a total of $636,830 in unsecured nonpriority debt.  She later stated in her amended Schedule F that she had a total of $661,674 in unsecured nonpriority debt.  The debtor initially reported the value of her interest in CRI ("CRI interest") at $16,000 in her original Schedule B, but changed it to $0 in her amended Schedule B.  She indicated that the $0 value of the CRI interest was a "postpetition valuation."  The debtor explained that the change in the CRI interest's value "result[ed] from [the] termination of CRI's health care operating license, [her] termination of business operations, and the transfer of patients to [] Unique Care, a different licensee [and another health care facility operator]."

The debtor stated in her original Schedule I that she was self-employed, naming CRI as her place of business.  She later reported in her amended Schedule I that she was unemployed as of June 9, 2010.  The debtor explained that she had terminated CRI's operations at the Westminster properties when the Department of Social Services ("DSS") revoked CRI's operating license.  CRI's patients were transferred to Unique Care, which apparently was a new entity run by her son-in-law, Joseph Nassif.

The debtor explained that she was temporarily leasing the Westminster properties to Unique Care on a month-to-month basis ("leasing arrangement").  She made the leasing arrangement with Unique Care to "enable uninterrupted continuation of [the

4

Westminster properties] mortgage payments and auto payments[6] until such time as [Unique Care] could obtain legal ownership of the [health care] facilities."

The debtor reported in her original and amended Schedule I a total monthly income of $15,578. Her total monthly income consisted of $2,722 net monthly take home pay, $66 monthly pension/retirement income and $12,790 monthly regular income from the operation of CRI. She reported $0 in estimated net monthly income in her amended business income and expenses statement ("amended business statement"), based on $13,700 in estimated future gross monthly income and $13,700 in rent for estimated future monthly expenses.[7] The debtor explained that she would have no income from the leases with Unique Care as they were "at cost," and Unique Care would directly pay the auto lease and the mortgages on the Westminster properties.[8] According to the

---

[6] The debtor reported making auto payments, but it was unclear whether she and/or CRI owned the 2008 Lincoln Navigator, the only vehicle they each listed in their respective bankruptcy documents. The debtor listed the 2008 Lincoln Navigator in her Schedule D and original and amended Schedule B. She also listed it under Subpart C: Deductions for Debt Payment, line 42(f) of her amended B22A form; she reported a $798.93 monthly payment to Ford Motor Credit Corporation for the vehicle.
CRI listed in its amended Schedule B the 2008 Lincoln Navigator (presumably the same as the one listed by the debtor). CRI listed monthly payments of $2,817 for "auto installment loans" in its business income and expenses statement.

[7] The debtor calculated the mortgage payments for the Westminster properties at $10,883, and auto lease payments at $2,817.

[8] The debtor provided this explanation in a declaration
(continued...)

5

debtor, the rental income she received would be "offset" by the auto lease payments and the mortgage payments on the Westminster properties.

In her original B22A form, the debtor reported $16,939 in current monthly income, which included $4,083 in gross wages and $12,790 in business income. In her amended B22A form, she reported $15,930 in current monthly income; she reduced her monthly gross wages to $2,333 and increased her monthly business income to $13,531. She reported in both the original and amended B22A forms current monthly expenses of $17,853.73.

Before the § 341(a) meeting was concluded, the appellees filed the motion to dismiss.[9] They contended that the debtor's chapter 7 case was presumptively abusive under § 707(b)(2)(A)(I) because she had sufficient income from renting the Westminster properties to pay her debts in full. The debtor failed to include rental income in her B22A form. Had she done so, the appellees argued, the debtor would have between $23,183 and $28,939 monthly income. Taking $17,853.73 in monthly expenses into account, the debtor would have between $5,329.27 and

---

[8](...continued)
attached to her amended business statement. She attached several documents to the amended business statement, including the declaration. The debtor did not provide a complete copy of the amended business statement in the record on appeal. We obtained a complete copy of the amended business statement from the bankruptcy court's electronic docket. See Atwood, 293 B.R. at 233 n.9.

[9] The chapter 7 trustee held the initial § 341(a) meeting on June 23, 2010, but continued it to July 12, 2010. He concluded the § 341(a) meeting on August 10, 2010.

6

$11,085.27 in monthly disposable income.

The appellees also argued that the debtor filed her chapter 7 petition in bad faith under § 707(b)(3)(A) because: (1) she failed to disclose the rental income from the Westminster properties in her B22A form; (2) she failed to disclose the fact that CRI operated health care facilities as required under Rule 2007.2; and (3) she made false and/or misleading statements regarding the termination of the operations of the health care business and the alleged sale of the health care facilities.

With respect to the third contention in particular, the appellees claimed that the debtor had not terminated operations at the health care facilities but continued to operate them and that she still was licensed to do so. They attached as an exhibit a copy of a printout of the health care facility vendor list provided by the Regional Center of Orange County ("RCOC"); the vendor list included CRI's health care facilities.

With respect to the sale of the health care facilities, the appellees argued that, contrary to her claim that she intended to liquidate the health care facilities by selling them to Nassif, the debtor intended to continue to operate the health care facilities.

The appellees alternatively contended that the totality of the circumstances under § 707(b)(3)(B), as demonstrated by the debtor's omissions and false and/or misleading statements, warranted dismissal of her chapter 7 case.

The debtor opposed the motion to dismiss. She claimed that the appellees made baseless allegations, failing to provide evidence to support them. The debtor also argued that, contrary

7

to the appellees' assertions, she did not intentionally omit information from her bankruptcy documents.

With respect to the alleged omission of the rental income, the debtor contended that her tax accountant classified certain transactions as rental income and expenses for tax reporting purposes, but there was "no double-counting of rent expense, no additional rent income and no net profit or loss from such treatment." Because of these classifications, the debtor "excluded them for financial presentation purposes in Schedule I and form B22A." She claimed that she properly calculated her income in the B22A form because the rental income was for "tax reporting purposes only."

The debtor asserted that she disclosed to the chapter 7 trustee at the § 341(a) meeting that CRI operated health care facilities. As to the proposed sale of the health care facilities to Nassif, the debtor asserted that she had not sold them and would not sell them without the chapter 7 trustee's consent. She further contended that she was not operating the health care facilities, as her operating license had been revoked. She claimed that the RCOC list had not been updated to reflect this.

The bankruptcy court held a preliminary hearing on August 3, 2010, on the motion to dismiss ("preliminary hearing"). It set over the hearing to December 16, 2010 ("dismissal hearing"). Shortly after the preliminary hearing, the chapter 7 trustee filed a no asset report on August 11, 2010.

The debtor appeared at the dismissal hearing. Her attorney at the time, Shahnaz Hussain, did not appear, however. Hussain

8

believed that he did not have to appear on the debtor's behalf, based on a discussion with the debtor's former attorney, Douglas G. Miller.

According to Hussain, Miller had told him that the motion to dismiss "should go away because [the debtor] didn't have any monies to pay her creditors and the [chapter 7] case was very likely going to be discharged by [the chapter 7 trustee]." Miller further told him that once the chapter 7 trustee discharged the debtor's chapter 7 case, the appellees would "have [no] case against [the debtor]" and that the dismissal hearing "would have no bearing on [the debtor's] bankruptcy case." Hussain also believed that the bankruptcy court would review the debtor's "entire file and determine that [the] motion to dismiss was frivolous" and "would see through [the appellees'] lies and deny [their] frivolous motion to dismiss." Hussain further explained that he did not appear at the dismissal hearing because he wanted "to save money for the [debtor]."

The bankruptcy court granted the motion to dismiss at the dismissal hearing.[10] Before the bankruptcy court entered the dismissal order, the debtor moved for reconsideration of the dismissal order under Civil Rule 60(b), applicable through Rule 9024.

The debtor argued in her reconsideration motion that the

---

[10] The bankruptcy court apparently issued a tentative ruling before the dismissal hearing. Neither the debtor nor the appellees provided a copy of the tentative ruling in the record on appeal, and it is not available on the bankruptcy court's docket.

9

appellees' motion to dismiss lacked merit as they provided no evidence to support their contentions in the motion to dismiss. She further contended that the appellees should have withdrawn the motion to dismiss when the chapter 7 trustee filed the no asset report. The debtor argued that the pending chapter 7 discharge, heralded by the chapter 7 trustee's no asset report, rendered the motion to dismiss nugatory.[11]

The bankruptcy court issued a tentative ruling before the February 8, 2011 hearing on the debtor's reconsideration motion ("reconsideration hearing"). The bankruptcy court determined that none of the grounds for granting reconsideration were present. It first found that the debtor did not contend that an intervening change in law occurred.

The bankruptcy court next determined that the debtor did not present any newly discovered evidence, particularly in regard to her rental income. While the motion to dismiss was pending, the bankruptcy court expressed concern as to the amounts reported on her income taxes as rental income. Before the dismissal hearing, the debtor provided a letter from her tax accountant regarding her rental income. The tax accountant explained in the letter

---

[11] The debtor also claimed that Walter, one of the appellees, was not a credible witness because she had been prohibited by the DSS from working at one of CRI's health care facilities.
The debtor attached a copy of a complaint against Walter, which alleged that Walter had taken a client away from one of CRI's health care facilities and smoked marijuana with that client. The debtor did not include any documents in the record indicating that a determination had been reached on the complaint against Walter.

that the debtor did not have any additional rental income and that CRI was not "double-expensing it," as CRI was disbursing the mortgage payments and applying them against the rent it owed to the debtor. The bankruptcy court noted in its tentative ruling on the motion to dismiss that "Schedule I show[ed] $12,790 monthly income against $13,700 in 'rent' expenses. This [did] not make a lot of sense if the debtor [owned] the properties." The tax accountant's letter "[gave] little detail and no real explanation."

The debtor included in the reconsideration motion the tax accountant's letter, along with her own declaration. The bankruptcy court found that the debtor's declaration offered little additional information; it merely restated her tax accountant's explanation of the rental income. Although the debtor provided more information in her declaration as to the revocation of her operating license and her leasing arrangement with Unique Care, the bankruptcy court found that this information did not constitute newly discovered evidence, as the debtor could have presented it at the dismissal hearing. The bankruptcy court moreover concluded that the information was not relevant to the primary issues. The bankruptcy court also found that the complaint against Walter did not constitute newly discovered evidence, given that the incident occurred in October 2009 and the complaint was dated December 10, 2010.

The bankruptcy court lastly determined that the debtor failed to show that it committed clear error in granting the motion to dismiss. It noted that the motion to dismiss "was properly before the [bankruptcy] court and was pending long

11

before [the chapter 7] Trustee's No Asset Report was filed. . . ."

The bankruptcy court determined that the appellees had no obligation to withdraw the motion to dismiss simply because the chapter 7 trustee had filed the no asset report. It pointed out that the debtor and her attorney, Hussain, had a "basic misunderstanding of the bankruptcy process" in believing that the chapter 7 trustee discharged the debtor when he filed the no asset report. The bankruptcy court explained that the chapter 7 trustee did not "'discharge' anything"; rather, "the discharge [was] granted by law to eligible debtors unless an adversary proceeding objecting to the discharge or seeking a dischargeability determination [was] timely filed." The bankruptcy court further explained that the chapter 7 trustee's no asset report merely disclosed his determination that no assets existed that could be efficiently liquidated to provide dividends for unsecured creditors. The filing of a no asset report by the chapter 7 trustee did not mean that the debtor was "home free" or "[could] ignore motions to dismiss, which [could] be based on other issues such as failure to adequately report or explain her affairs."

Having determined that the debtor failed to establish grounds for reconsideration, the bankruptcy court denied the reconsideration motion. It entered the reconsideration order one week following the hearing on the reconsideration motion.

The debtor timely appealed.

///

///

12

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

(1) Did the bankruptcy court abuse its discretion in dismissing the debtor's chapter 7 case?

(2) Did the bankruptcy court abuse its direction in denying the debtor's reconsideration motion?

**STANDARDS OF REVIEW**

"We have discretion to summarily affirm the bankruptcy court's rulings when an appellant fails to provide us with the relevant transcript." Clinton v. Deutsche Bank Nat'l Trust Co. (In re Clinton), 449 B.R. 79, 82 (9th Cir. BAP 2011)(citing Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1190-91 (9th Cir. 2003)).

We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. Price v. U.S. Trustee (In re Price), 353 F.3d 1135, 1138 (9th Cir. 2004).

We review the bankruptcy court's order dismissing the case for abuse of discretion. Id. We conduct the same review for its order denying a motion for reconsideration, whether the motion for reconsideration is based on Civil Rule 59(e) or Civil Rule 60(b). School District No. 1J v. AC&S, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993). We also conduct the same review for the bankruptcy court's evidentiary rulings. Johnson v. Neilson

13

(In re Slatkin), 525 F.3d 805, 811 (9th Cir. 2008).

We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 & n.20. We must affirm the bankruptcy court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id.

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**DISCUSSION**

The debtor appeals both the dismissal order and the reconsideration order. We address the appeal of each order in turn.

A. Dismissal order

The bankruptcy court did not issue written factual findings and legal conclusions when it granted the motion to dismiss. It issued a tentative ruling, which, we presume, it adopted at the dismissal hearing.[12] We also presume that the bankruptcy court

---

[12] We know that the bankruptcy court issued a tentative ruling on the motion to dismiss because it quoted a portion of
(continued...)

14

orally announced its factual findings and legal conclusions at the hearing, as required under Civil Rule 52(a), which applies in contested matters by way of Rules 1017(f), 9014 and 7052. See Khachikyan v. Hahn (In re Khachikyan), 335 B.R. 121, 125-26 (9th Cir. BAP 2005)(motions to dismiss under § 707(b)). See also McCarthy v. Prince (In re McCarthy), 230 B.R. 414, 417 (9th Cir. BAP 1999)(motions to remand). We make these assumptions because the debtor did not include in the record on appeal a transcript of the dismissal hearing or a copy of the tentative ruling on the motion to dismiss.

Rule 8006 requires an appellant to include any opinion, findings of fact and conclusions of law of the court and any transcript that will be needed in the record on appeal. McCarthy, 230 B.R. at 417. "These items are mandatory, not optional." Id. Whenever the bankruptcy court orally issues factual findings and legal conclusions on the record, "it is mandatory that an appellant designate the transcript under Rule 8006 [as] [t]here is no other way for an appellate court to be able to fathom the trial court's action." Id. Rule 8009(b)(5) imposes the same requirement.[13] Id. See also

---

[12](...continued) the tentative ruling on the motion to dismiss in its tentative ruling on the reconsideration motion.

[13] Rule 8009(b)(5) provides: "If the appeal is to a bankruptcy appellate panel, the appellant shall serve and file with the appellant's brief excerpts of the record as an appendix, which shall include . . . [t]he opinion, findings of fact, or conclusions of law filed or delivered orally by the court and citations of the opinion if published."

15

Rule 8009(b)(9).[14]

As appellant, the debtor has the responsibility to provide an adequate record on appeal. Kritt v. Kritt (In re Kritt), 190 B.R. 382, 387 (9th Cir. BAP 1995). Her record on appeal omits the bankruptcy court's factual findings and legal conclusions, which renders the record incomplete as a matter of law. See McCarthy, 230 B.R. at 417.

The debtor's failure to provide the transcript of the dismissal hearing allows us to dismiss her appeal of the dismissal order. See Syncom Capital Corp. v. Wade, 924 F.2d 167, 169 (9th Cir. 1991). Alternatively, we are entitled to affirm summarily the bankruptcy court's decision. See Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004), aff'd, 170 Fed. Appx. 457 (9th Cir. 2006)("The settled rule on transcripts in particular is that failure to provide a sufficient transcript may, but need not, result in dismissal or summary affirmance and that the appellate court has discretion to disregard the defect and decide the appeal on the merits.")(citations omitted).

The dismissal order provides little insight as to the legal and/or factual grounds on which the bankruptcy court dismissed the debtor's chapter 7 case. There are facts in the record before us that seem to provide sufficient grounds for dismissal under § 707(b)(1), but we cannot discern which of these the

---

[14] Rule 8009(b)(9) provides: "If the appeal is to a bankruptcy appellate panel, the appellant shall serve and file with the appellant's brief excerpts of the record as an appendix, which shall include . . . [t]he transcript or portion thereof, if so required by a rule of the bankruptcy appellate panel." We have such a rule. See BAP Rule 8006-1.

16

bankruptcy court relied upon in making its decision. Without any factual findings or legal conclusions, we cannot determine whether the bankruptcy court abused its discretion in dismissing the debtor's chapter 7 case. We thus exercise our discretion and summarily affirm the bankruptcy court's decision granting the appellee's motion to dismiss.[15]

B.    Reconsideration order

Like the dismissal order, the reconsideration order is perfunctory; it does not specify the legal grounds underlying the denial of the reconsideration motion. Although the debtor sought reconsideration under Civil Rule 60(b),[16] the bankruptcy court conducted its analysis under Civil Rule 59(e).

The Civil Rules do not recognize motions for reconsideration. Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.), 311 B.R. 530, 539 (9th Cir. BAP 2004). The Civil Rules do provide, however, two avenues through which a party may obtain post-judgment relief: (1) a motion to alter or amend judgment under Civil Rule 59(e) and (2) a motion for relief from judgment under Civil Rule 60. Civil Rule 59(e) applies to bankruptcy proceedings under Rule 9023, and Civil Rule 60 applies

---

[15] We note that nothing appears to prevent the debtor from commencing a new bankruptcy case. The dismissal order did not impose a bar to refiling. At oral argument, the Panel asked debtor's counsel why the debtor did not file a new chapter 7 case rather than pursuing a problematic appeal. No satisfactory answer was forthcoming.

[16] The debtor did not cite in the reconsideration motion the specific subsection of Rule 60(b) under which she sought relief.

17

to bankruptcy proceedings under Rule 9024. "When taken together, [Civil] Rule 59 and [Civil] Rule 60 encompass all possible post-judgment relief: Rule 59 incorporates common law principles of equity for granting new trials, and [Civil] Rule 60 preserves the relief afforded by ancient remedies for relief from settlement judgments while abolishing the separate and independent use of those remedies." In re Walker, 332 B.R. 820, 831-32 (Bankr. D. Nev. 2005)(internal citations omitted).

Civil Rule 59(e) allows for reconsideration if the bankruptcy court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual circumstances warranting reconsideration." AC&S, Inc., 5 F.3d at 1253 (internal citation omitted). Civil Rule 60(b) allows for reconsideration "only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." Id. (citation omitted, internal quotation marks omitted).

Where a party files a motion for reconsideration within 14 days after the entry of judgment, the motion is treated as a motion to alter or amend judgment under Civil Rule 59(e).[17] Am.

---

[17] As we mentioned earlier, Civil Rule 59(e) applies to bankruptcy proceedings under Rule 9023. Originally, the deadline by which to file a motion for reconsideration under Civil Rule 59(e) was 10 days, but Rule 9023 was amended in 2009 to extend the time period to 14 days.

18

*Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001)(citation omitted). Otherwise, the motion is treated as a motion for relief from a judgment or order under Rule 60(b). *Id.* A party may not use a motion for reconsideration "to present a *new* legal theory for the first time or to raise legal arguments which could have been raised in connection with the original motion . . . [or] to rehash the same arguments presented the first time or simply to express the opinion that the court was wrong." *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 104, *aff'd and remanded*, 277 F.3d App'x 718 (9th Cir. 2006) (quoting *In re Armstrong Store Fixtures Corp.*, 139 B.R. 347, 349-50 (Bankr. W.D. Pa. 1992)(emphasis in original, citations omitted).

Here, the debtor filed the reconsideration motion *before* the bankruptcy court entered the dismissal order. We thus conduct our review of the bankruptcy court's decision on the reconsideration motion under Civil Rule 59(e).[18]

On appeal, the debtor argues that the bankruptcy court should have reconsidered the dismissal order because it committed clear error in its determinations on the motion to dismiss and the reconsideration motion. Specifically, the debtor contends that the bankruptcy court clearly erred when it (1) considered the appellees' allegations and evidence, though they were inadmissible, and (2) denied the reconsideration motion on the

---

[18] We reason that the filing of a motion for reconsideration of a bankruptcy court's order before entry of such order is analogous to the premature filing of a notice of appeal under Rule 8002(a).

19

dismissal order even though the dismissal order had not been entered at that time.

With respect to the first point, the debtor did not raise any specific evidentiary objections in her opposition to the motion to dismiss, and we cannot tell from the record what, if any, evidentiary objections were made by the debtor at the dismissal hearing. The debtor contended that the appellees made "baseless allegations" and failed to provide evidence to support them. The debtor never argued that the documents and statements, including declarations, provided by the appellees in their motion to dismiss were inadmissible on other than general grounds. As we stated earlier, we review the bankruptcy court's evidentiary rulings for an abuse of discretion. In re Slatkin, 525 F.3d at 811. "To reverse on the basis of an erroneous evidentiary ruling, we must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." Id. Here, the debtor failed to demonstrate that the bankruptcy court made erroneous evidentiary rulings and that its errors were prejudicial.

With respect to the second point, we do not fault the bankruptcy court for ruling on the reconsideration motion before the dismissal order was entered because it was the debtor who brought the reconsideration motion to its attention. The debtor had moved for reconsideration before the dismissal order was entered; she cannot now complain that the bankruptcy court acted prematurely on the reconsideration motion when she brought it in the first place.

The debtor also maintains that "highly unusual circumstances

20

were present" warranting reconsideration of the dismissal order. Appellant's Opening Brief at 6.  According to the debtor, these highly unusual circumstances consisted of the debtor lacking effective legal representation at the time of the dismissal hearing.  Specifically, she complains that Miller and Hussain both failed to provide competent legal advice, particularly in the way they construed the chapter 7 trustee's no asset report and in their failure to raise evidentiary objections in opposition to the motion to dismiss and at the dismissal hearing. She also complains that Hussain "abandoned her" by failing to appear at the dismissal hearing.

Reconsideration of orders or judgments after their entry is an extraordinary remedy that courts should use sparingly "in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)(quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4](3d ed. 2000))(internal quotation marks omitted).  Courts need to "preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts."  Walker, 332 B.R. at 832 (quoting Kieffer v. Riske (In re Kieffer-Mickes, Inc.), 226 B.R. 204, 209 (9th Cir. BAP 1998))(internal quotation marks omitted).

It is unfortunate that the debtor apparently chose incompetent counsel to represent her.  But these are hardly extraordinary circumstances warranting reconsideration; sadly, ineffective legal representation is a circumstance that happens more often than we like to see.  See, e.g., Herrero v. Guzman

21

(In re Guzman), 2010 WL 625994 at *7 (9th Cir. BAP 2010)("The Ninth Circuit has similarly found that attorney inexperience, poor litigation decisions, mistakes of law, or alleged malpractice are not encompassed under [Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993)]'s excusable neglect analysis [for Rule 60(b) motions].")(collecting cases, citations omitted); Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1101 (9th Cir. 2006); Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004). It is not a highly unusual circumstance that warrants the extraordinary remedy of relief from a judgment or an order. The debtor moreover did not establish other grounds for reconsideration under Civil Rule 59(e). We thus conclude that the bankruptcy court did not abuse its discretion in denying the debtor's reconsideration motion.

**CONCLUSION**

The debtor fails to show that the bankruptcy court abused its discretion in granting the motion to dismiss and denying the reconsideration motion. We AFFIRM.

22